Opinion delivered June 13, 1888.

## No. 6139.

## Tobe Lacey *v.* The State.

Theft—Fact Case.—See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft, because too inconclusive and uncertain.

Appeal from the District Court of Kerr. Tried below before the Hon. T. M. Paschal.

The conviction was for the theft of one head of neat cattle, the property of Adam Wilson, in Kerr county, Texas, on the first day of September, 1885. The penalty assessed by the verdict was a term of two years in the penitentiary.

William Wharton was the first witness for the State. He testified that on September 1, 1885, he and others, then on a cow hunt, entered a pasture on the West Frio. The fence around that pasture was of brush and a very poor one, being completely down in places. That pasture contained a bunch of poor calves, which looked to be motherless animals. They were all branded TOB on the side. About a hundred yards from this bunch of calves was a solitary calf in a very poor and starved condition. It was branded TOB on the side, and AW connected, with a fresh bar run through. It was evident that the original brand was AW connected, and that it had been barred out. The fresh marks on the ears were a "point" in one ear and a smooth

crop off the other, leaving indications that the original marks were a crop and an under half crop in each ear. Witness and his party drove the calf to Habic's ranch and sent word to Adam Wilson to come and get his calf.

Cross examined, the witness said that he did not know who gave the TOB brand. He did not see the defendant on the day he found the calf, nor did he ever hear the defendant claim the TOB brand. He never saw the calf in possession of defendant, nor did he ever hear defendant claim the calf. He could not now remember which side of the calf the brands were on.

Adam Wilson testified, for the State, that he lived in Kerr county, Texas. He went to San Antonio some time in the month of August, 1885, and left a cow and yearling in his pen, the said animals having been kept up for the purpose of doctoring the yearling for worms. The said animals were turned out during witness's absence. He found the cow after he got back, but could not find the calf on the range. Upon certain information which was brought to him, witness went to Habic's ranch, where he found his said animal. Witness's brand, AW connected, had been barred out, and the TOB brand put on the side, and the ear marks had been changed in the manner stated by the previous witness. The said calf was the joint property of witness and his sister-in-law, but witness had the absolute control, care and management of the same. The animal's range was immediately around witness's ranch in Kerr county, and the animal was taken from that range without witness's knowledge or consent. About six weeks before witness went to San Antonio he met the defendant on the "divide," and he asked witness if he had seen anything of a horse branded TOB. Witness replied that he had seen such a horse at a certain place, and asked defendant if he owned that horse, and he said that he did.

Cross examined, the witness said that the defendant first asked about the TOB horse before the disappearance of the calf, and it was on the range, about three miles from the Frio water hole, where he and defendant met on that occasion. Witness denied that the first remark about the said horse was made by defendant after his arrest and while he was being taken to the jail in Kerrville. No one was present but witness and defendant when defendant made that inquiry. Witness had never seen the defendant before, and did not ask, nor did defendant mention his name. It was not a fact that witness had never seen defend-

ant until he saw him in arrest and in charge of Bill Wharton. Witness did not know a man by the name of Selman. Defendant, while in arrest, and while en route to Kerrville in charge of Bill Wharton, asked witness again about the horse, but did not claim the TOB brand. He told witness on the first occasion that he owned the TOB horse, about which he was inquiring, but did not claim the brand.

J. T. Aiken testified, for the State, that he lived in Bandera county, and that he was with the witness Wharton on the cow hunt when the calf was found in the old pasture. This witness testified that that was a "catch pasture," and was situated near the defendant's house. Continuing, he testified substantially as did the witness Wharton.

The State closed.

The defendant introduced in evidence the record of marks and brands of Kerr county, which showed that on the seventeenth day of July, 1884, the TOB brand and the mark known as crop off the right and crop and underslope in the left ear were entered as the mark and brand of Jake Lacey, who, it was proved by the defendant's witness Johnson, was a brother of the defendant, and lived with his mother on West Frio, in Edwards county, Texas.

No brief for the appellant has reached the Reporters.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This appeal is from a conviction for theft of one head of neat cattle. The Assistant Attorney General does not ask an affirmance, but simply submits the case upon the record for our decision.

The inculpatory evidence against defendant is that the calf was found in a pasture near the place where he lived, in Edwards county, on the West Frio, with the original brand barred out and the TOB brand placed on it, and the marks in the ear changed. There is also evidence that the defendant at one time claimed a horse in the TOB brand. Defendant proved that the altered mark and the brand TOB were recorded in Kerr county as the mark and brand of one Jake Lacey, and that Jake Lacey is a brother of his, and lives with his mother on West Frio, in Edwards county.

We are of opinion that the evidence is too unsatisfactory, in-

conclusive and insufficient to warrant the conviction, and the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Opinion delivered June 13, 1888.